## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| **Alvao Digital, LLC,** | |
| **Plaintiff,** | **Case No. 6:21-cv-01208** |
| v. | **Jury Trial Demanded** |
| **Ticketmaster L.L.C, University of Texas at El Paso, University of Texas at San Antonio, Live Nation Entertainment, Inc., Austin City Limits Enterprises, LLC, C3 Presents, L.L.C., Stratus Properties, Inc. and 3TEN, LLC,** | |
| **Defendants.** | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Alvao Digital, LLC ("Plaintiff") hereby files this Original Complaint for Patent Infringement against Ticketmaster L.L.C. ("Ticketmaster"), University of Texas at El Paso ("UTEP"), University of Texas at San Antonio ("UTSA"), Live Nation Entertainment, Inc. ("Live Nation"), ACL Enterprises, LLC ("ACL"), C3 Presents, L.L.C. ("C3"), Stratus Properties, Inc. ("Stratus") and 3TEN, LLC ("3TEN" and collectively with Ticketmaster, UTEP, UTSA, Live Nation, ACL, C3, and Stratus, "Defendants"), and alleges, upon information and belief, as follows:

## THE PARTIES

1.    Alvao Digital, LLC is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business at: 600 South Dixie Highway, West Palm Beach, Florida 33401.

2.    Upon information and belief, Ticketmaster is a corporation organized and existing under the laws of the State of Virginia with its principal place of business at 8800 Sunset Boulevard, West Hollywood, California 90069.  On information and belief, Ticketmaster may be served through its registered

agent in the State of Texas: Corporate Creations Network Inc. at 5444 Westheimer, #1000, Houston, Texas 77056.

3.      Upon information and belief, UTEP may be served through its President, Diana Natalicio, at the University of Texas at El Paso, President's Office, Administration Building, Room 500, 500 West University Avenue, El Paso, Texas 79902.

4.      Upon information and belief, UTSA may be served through its President, Taylor Eighmy, at the University of Texas at San Antonio, Office of the President, Main Building, Suite 4.122, One UTSA Circle, San Antonio, Texas 78249.

5.      Upon information and belief, Live Nation is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 9348 Civic Center Drive, Beverly Hills, California 90210.  On information and belief, Live Nation may be served through its registered agent in the State of Texas: Corporate Creations Network Inc. at 5444 Westheimer, #1000, Houston, Texas 77056.

6.      Upon information and belief, ACL is a corporation organized and existing under the laws of the State of Texas with its principal place of business at 310 West Willie Nelson Boulevard, Austin, Texas 78701.  On information and belief, ACL may be served through its registered agent in the State of Texas: CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

7.      Upon information and belief, C3 is a corporation organized and existing under the laws of the State of Texas with its principal place of business at 645 East 6th Street, Suite 150, Austin, Texas 78702. On information and belief, C3 may be served through its registered agent in the State of Texas: Corporate Creations Network Inc. at 5444 Westheimer, #1000, Houston, Texas 77056.

8.      Upon information and belief, 3TEN is a corporation organized and existing under the laws of the State of Texas with its principal place of business at 1104 Nocona Drive, McKinney, Texas 75071. On information and belief, 3TEN may be served through its registered agent in the State of Texas: Trevor Tennison at 1104 Nocona Drive, McKinney, Texas 75071.

9.     Upon information and belief, Stratus is a corporation organized and existing under the laws of the State of Texas with its principal place of business at 212 Lavaca Street, Suite 300, Austin, Texas 78701.  On information and belief, Stratus may be served through its registered agent in the State of Texas: Corporation Service Company at 211 East 7th Street, Suite 620, Austin, Texas 75701.

10.    Upon information and belief, Live Nation owns a majority stake in Austin-based concert promoter C3, which runs ACL.

11.    Upon information and belief, ACL and 3TEN promote and maintain events in collaboration at Moody Theater at 310 West Willie Nelson Boulevard, Austin, Texas 78701, owned by Stratus. Live Nation, C3, ACL, 3TEN and Stratus will be referred to collectively as "ACL Defendants."

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338.

13.    This Court has personal jurisdiction over Defendants.  Defendants have continuous and systematic business contacts with the State of Texas.  Defendants transact business within this District and elsewhere in the State of Texas and has appointed an agents for service of process in Texas. Further, this Court has personal jurisdiction over Defendants based on their commission of one or more acts of infringement of Alvao's Patents in this District and elsewhere in the State of Texas.

14.    Defendants directly conduct business extensively throughout the State of Texas, by distributing, making, using, offering for sale, selling, and advertising (including the provision of interactive web pages; event ticket service that allows a ticket(s) purchaser to transfer the ticket(s) to others, after an event or game has started, via the phone application, a desktop or laptop, or via a team's or venue's account manager account; and further including maintaining physical facilities) their services in the State of Texas and in this District.  Defendants have purposefully and voluntarily made their business services, including the infringing systems and services, available to residents of this District and into the stream of commerce with the intention and expectation that they will be purchased and/or used by consumers in this District.  On information and belief, Defendants are providers of

event ticket services that allow a ticket(s) purchaser to transfer the ticket(s) to others, after an event or game has started, via the a phone application, a desktop or laptop, or via a team's or venue's account manager account throughout the United States.

15.    On information and belief and as shown in Figure 1, Ticketmaster maintains physical brick-and-mortar business locations in the State of Texas and within this District, retains employees specifically in this District for the purpose of servicing customers in this District, and generates substantial revenues from its business activities in this District.



**Figure 1 – Screenshot of Ticketmaster's website for office location in Austin, Texas as visited on November 17, 2021 and located at https://jobs.ticketmaster.com/?_ga=2.109288581.123572727.1626882571-820648219.1626882571.**

16.    On information and belief and as shown in Figure 2, Live Nation maintains physical brick-and-mortar business locations in the State of Texas and within this District, retains employees specifically in this District for the purpose of servicing customers in this District, and generates substantial revenues from its business activities in this District.



**Figure 2 – Screenshot of Live Nation's website for its venue location in San Antonio, Texas as visited on November 17, 2021 and located at https://specialevents.livenation.com/venues.**

17.     Venue is proper in the Western District of Texas as to Defendants pursuant to at least 28 U.S.C. §§ 1391(c)(2) and 1400(b).  As noted above, Defendants maintain a regular and established business presence in this District.

## PATENTS-IN-SUIT

18.     Plaintiff is the sole and exclusive owner, by assignment, of U.S. Patents 7,899,717 and 10,185,918 (hereinafter collectively referred to as "the Alvao Patents").

19.     By written instruments duly filed with the United States Patent and Trademark Office, Alvao is assigned all rights, title, and interest in the Alvao Patents.  *Id.* As such, Plaintiff Alvao Systems, LLC has sole and exclusive standing to assert the Alvao Patents and to bring these causes of action.

20.     The Alvao Patents are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

21.     Raymond A. Joao is the sole named inventor for the Alvao Patents.

22.     Mr. Joao is a pioneering inventor.  The Alvao Patents represent substantial technological advancements in the electronic ticketing services industry, which were unconventional at the time of invention.  Indeed, the Alvao Patents have back been back-cited in patents issued to well-known

industry leaders, including: Ticketmaster, L.L.C., Stubhub, Inc., Tickets.com, Inc., Flip Tix, Inc., Live Nation Entertainment, Inc., Seatme, Inc., American Express Travel Related Services Company, Inc., The Western Union Company, Ebay Inc. and IBM, These companies have benefited from, and been provided notice through, their back-citations to the Alvao Patents.

23. The Alvao Patents each include numerous claims defining distinct inventions. No single claim is representative of any other.

24. The priority date of each of the Alvao Patents is at least as early as November 6, 2000. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine. Indeed, the Alvao Patents overcame a number of specific technological problems in the industry, and provided specific technological solutions.

25. By way of example, as of the date of invention, it was "commonly known that tickets to [sic] events or venues are or can be expensive" and "[i]n many instances, individuals purchase tickets and either do not utilize them or only utilize them for a portion of the respective event of venue," thereby, "the tickets [sic] go unutilized by the ticket holder for the entire event or portion of the event." *See* U.S. Patent No. 7,899,717, Col. 1, ll. 30-7.

26. Thus, as examples, this plays out when: (a) "a season ticket holder of baseball tickets, basketball tickets, football tickets, or hockey tickets, fails to utilize his or her tickets for every game, and/or when the holder of a ticket(s) leaves a game prior to its completion or conclusion; or (b) season ticket holders for theatre tickets, movie tickets, etc., can experience the same non-use of their respective tickets." *Id.*, Col. 1, ll. 38-44.

27. As a result, as the date of the inventions in the Alvao Patents, "once tickets [were] sold by a ticket office, ticket issuer, event sponsor, or other ticket seller or ticket dispenser, the ticket holder [was required to] either utilize the ticket(s), resell the ticket(s) prior to the start or beginning of the event, utilize the ticket(s) for only a portion of the event, or let the ticket(s) go [un]used completely." *Id.*, Col. 1, ll. 45-50.

28.   Further, "[t]he value of tickets which go completely unused or which go only partially used [could] represent a substantial amount of lost or foregone revenues for ticket holders who [were] unable to utilize tickets and/or who only utilize[d] tickets for a portion of an event or for a portion of a venue." *Id.*, Col. 1, ll. 51-6.

29.   There simply was "no apparatus or method in the prior art which can allow a ticket holder to recoup revenues for unused tickets and/or tickets which [were] only utilized for a portion of an event or for a portion of a venue." *Id.*, Col. 1, ll. 57-60.

30.   As a result, the Alvao Patents "pertain[] to an apparatus and method for selling a ticket or tickets to an event or venue and/or to a portion of an event or venue which overcomes the shortfalls of the prior art," and/or "an apparatus and method for selling a ticket option to an event or venue and/or to a portion of an event or venue". *Id.*, Col.1, l. 64-Col. 2, ll. 1-2.

31.   The Alvao Patents also "provid[ed]an apparatus and method which can facilitate a resale of a ticket for an event or venue or for a portion of an event or venue" and/or an apparatus and method which can facilitate the resale of a used ticket or tickets." *Id.*, Col.2, ll. 3-7.

32.   The Alvao Patents also addressed and invented "an[sic] apparatus and method which can provide notification of the availability of a ticket(s) for sale or resale" and "which can provide notification of the availability of a buyer for a ticket(s) for an event or venue or for a portion of an event or venue." *Id.*, Col.2, ll. 8-13.

33.   The Alvao Patents further addressed and invented "provid[ing] information for selling and/or trading options to purchase or to sell any of the tickets." *Id.*, Col.2, ll. 15-7.

34.   The claims of the Alvao Patents are patent eligible under 35 U.S.C. § 101, 102, 103, and 112, as reflected by the fact that three different Patent Examiners all agreed and allowed the Alvao Patents over extensive prior art as disclosed and of record during the prosecution of the Alvao Patents.  *See Stone Basket Innov. v. Cook Medical,* 892 F.3d 1175, 1179 (Fed. Cir. 2018) ("when prior art is listed on the face of a patent, the examiner is presumed to have considered it") (citing *Shire LLC v. Amneal*

*Pharm., LLC,* 802 F.3d 1301, 1307 (Fed. Cir. 2015)); *Exmark Mfg. v. Briggs & Stratton,* 879 F.3d 1332, 1342 (Fed. Cir. 2018).

35.     Moreover, any arguments relating to eligibility as may be made by Defendants here are necessarily merely cumulative with those already considered, and rejected, by the Patent Examiners in allowing the Alvao Patents.  *See, e.g., Technology Licensing Corp. v. Videotek, Inc.,* 545 F.3d 1316, 1337 (Fed. Cir. 2008); *Stone Basket,* 892 F.3d at 1179.

36.     The claims of the Alvao Patents are not drawn to laws of nature, natural phenomena, or abstract ideas.  Although the systems and methods claimed in the Alvao Patents are ubiquitous now (and, as a result, are widely infringed), the specific combinations of elements, as recited in the claims, were not conventional or routine at the time of the invention.

37.     Further, the claims of the Alvao Patents, as described in paragraphs 15-23 above, contain inventive concepts.  Even if a court ruled the underlying aspects to be abstract, the inventive concepts disclosed in sufficient detail would transform the claims into patent-eligible subject matter.

38.     As further evidence of the inventive nature of the inventions claimed in the Alvao Patents, the Alvao Patents each had at least 35 citations before being issued as valid and enforceable patents.

39.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiners allowed all of the claims of the Alvao Patents to issue.  In so doing, it is presumed that Examiners used their knowledge of the art when examining the claims.  *See K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Patent Examiners had experience in the field of the invention, and that the Patent Examiners properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

40.     The claims of the Alvao Patents are novel and non-obvious, including over all non-cited art that is merely cumulative with the referenced and cited prior art.  *See* 37 C.F.R. § 1.56(b) (information is

material to patentability when it is not cumulative to information already of record in the application); *see also AbbVie Deutschland GmbH v. Janssen Biotech,* 759 F.3d 1285, 1304 (Fed. Cir. 2014); *In re DBC,* 545 F.3d 1373, 1382 (Fed. Cir. 2008).  Likewise, the claims of the Alvao Patents are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by the Examiners.  *See, e.g., St. Clair I.P. Consultants v. Canon, Inc.,* 2011 WL 66166 at *6 (Fed. Cir. 2011); *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002); *In re Koninklijke Philips Patent Litigation,* 2020 WL 7392868 at *19 (N.D. Cal. 2020); *Standard Oil v. American Cyanamid,* 774 F.2d 448, 454 (Fed. Cir. 1985) (persons of ordinary skill are presumed to be aware of all pertinent prior art).

41.     The claims of the Alvao Patents were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration.  *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.'  Much to the contrary, a patent does have value beyond its expiration date.  For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286.") (internal citations omitted).

## THE ACCUSED INSTRUMENTALITIES

42.     Upon information and belief, Defendants make, sell, advertise, offer for sale, use, or otherwise provide a plurality of systems, platforms and services, including but not limited to:

i.      Ticketmaster Ticket Transfer: On information and belief, the Ticket Transfer platform and solution is an event ticket service that allows a ticket(s) purchaser to transfer the ticket(s) to others, after an event or game has started, via the Ticketmaster phone application, a desktop or laptop, or via a team's or venue's account manager account.  It includes features as shown below in Figures 3 through 6.



**Figure 3 – Screenshot of Ticketmaster's webpage for Ticket Transfer as visited on November 17, 2021 and located at https://help.ticketmaster.com/s/article/Can-ticket-holders-transfer-tickets-after-the-game-has-started?language=en_US#:~:text=Title-,Can%20ticket%20holders%20transfer%20tickets%20after%20the%20game%20has%20started,after%20the%20game%20has%20begun.**



**Figure 4 – Screenshot of Ticketmaster's webpage explaining the Ticket Transfer service and platform as visited on November 17, 2021 and located at https://help.ticketmaster.com/s/article/What-is-Ticket-Transfer?language=en_US.**



**Figure 5 – Screenshot of Ticketmaster's webpage explaining the Ticket Transfer service and platform as visited on November 17, 2021 and located at https://help.ticketmaster.com/s/article/How-do-I-transfer-tickets?language=en_US.**

> ## Transfer with a Desktop or Laptop
>
> 1. Sign in to your Ticketmaster account.
> 2. Navigate to your event by clicking your name in the top right and clicking My Tickets.
> 3. Find your event and click See Details.
> 4. Click Transfer Tickets.
>    NOTE: If the Transfer button is grayed out, your tickets are not eligible for transfer.
> 5. Select the tickets you'd like to transfer and click Continue.
> 6. Enter your recipient's information, including their email address and an optional note.
> 7. Click Send.
>
> Your transferred tickets will show as sent. When your recipient has accepted them, the ticket will show as claimed. You will receive an email confirming the ticket has been accepted by your recipient. After a successful transfer, the ticket is no longer valid for entry from your account.

**Figure 6 – Screenshot of Ticketmaster's webpage explain the Ticket Transfer service and platform as visited on November 17, 2021 and located at https://help.ticketmaster.com/s/article/How-do-I-transfer-tickets?language=en_US.**

    ii.    UTEP's athletics sales and offering of tickets for athletic games after the start of the games, as shown below in Figure 7.



**Figure 7 – Screenshot of UTEP's webpage redirecting to Ticketmaster to buy tickets after a game has started as visited on November 9, 2021.**

      iii.    UTSA's athletics sales and offering of tickets for athletic games after the start of the games, as shown below in Figure 8.



**Figure 8 – Screenshot of UTSA's webpage redirecting to Ticketmaster to buy tickets after a game has started as visited on November 16, 2021.**

iv.    ACL Defendants' sales and offering of tickets for events after the start of the events, as shown below in Figure 9.



**Figure 9 – Screenshot of ACL Defendants' webpage redirecting to Ticketmaster to buy tickets after an event has started as visited on November 16, 2021.**

v.    And all augmentations to these named platforms or descriptions of the above platforms.

Collectively, all of the foregoing are referred to herein as the "Accused instrumentalities."

**COUNT I**
**Infringement of U.S. Patent No. 7,899,717**

43.    Plaintiff incorporates the above paragraphs by reference.

44.    Defendants have been on actual notice of the '717 Patent at least as early as the date it received service of the Original Complaint in this litigation.

45.    The damages period begins at least as early as six years prior to the date of service of the Original Complaint in this litigation.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    13

46.     Upon information and belief, Defendants own, direct, and/or control the operation of the Accused Instrumentalities and generate substantial financial revenues and benefits therefrom.

47.     Upon information and belief, Defendants have directly infringed and continue to directly infringe at least Claims 1-39 of the '717 Patent.  As exemplary, Claim 39 is infringed by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities. Defendants directly make the infringing Accused Instrumentalities at least because they are solely responsible for putting the infringing systems into service by directing or controlling the systems as a whole and by obtaining the benefits therefrom.  More specifically, and on information and belief, with respect to the Accused Instrumentalities, Defendants: (i) developed, own, and maintain hardware and software to allow for the transfer of tickets from a ticket purchaser to second user after the event has started for use by the second user; (ii) provide access to such transfers via their own branded Internet domains and/or software applications using their own name and business trade dress; (iii) exercise authority over the provision of such ticket transfers; (v) openly advertise and promote such ticket transfer services bearing their name and business trade dress to customers in the United States; (vi) authored or commissioned the preparation of computer code for the transfer of tickets via their Internet domain web pages and/or software applications; (vii) claim ownership and control over such ticket transfers by virtue of their corporate branding and the provision of direct access; and (viii) receive monetary benefits from the provision of such ticket transfer services to customers.

48.     Further on information and belief, Defendants directly use the infringing Accused Instrumentalities at least because they assembled the combined infringing elements and make them collectively available in the United States, including via their Internet domain web

pages and/or software applications, as well as via their internal systems and interfaces. Further, and on information and belief, Defendants have directly infringed by using the infringing Accused Instrumentalities as part of their ongoing and regular testing and/or internal legal compliance activities.   Such testing and/or legal compliance necessarily requires Defendants to make and use the Accused Instrumentalities in an infringing manner. Still further, Defendants are a direct infringer by virtue of their branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Instrumentalities.

49.    As Figures 3-9 show above, Defendants are making, using, and offering for sale a computer-implemented method and apparatus, identified as the Accused Instrumentalities.

50.    On information and belief, the infringement of the Alvao Patents by Defendants is willful by their own citation to the Alvao Patents in patent applications.

51.    In addition or in the alternative, Defendants had knowledge and continues these actions and they indirectly infringe by way of inducing direct infringement by others and/or contributing to the infringement by others of the '717 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of at least Claims 1-39 of the '717 Patent. This includes without limitation, one or more of the Accused Instrumentalities by making, using, importing offering for sale, and/or selling such services, Defendants injured Alvao and are thus liable to Alvao for infringement of the '717 Patent under 35 U.S.C. § 271.

52.    With the above described knowledge of the Alvao Patents, Defendants induced infringement under Title 35 U.S.C. § 271(b).  Defendants performed actions that induced infringing acts

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                      15

that Defendants knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313, (Fed. Cir. 2007).

53.   Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

54.   Defendants have taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

55.   The foregoing infringement on the part of Defendants have caused past and ongoing injury to Plaintiff.   The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the Alvao Patents.

56. Each of Defendants' aforesaid activities have been without authority and/or license from Plaintiff.

## COUNT II
## Infringement of U.S. Patent No. 10,185,918

57. Plaintiff incorporates the above paragraphs by reference.

58. Defendants have been on actual notice of the '918 Patent at least as early as the date they received service of the Original Complaint in this litigation.

59. The infringement damages period begins at least as early as six years prior to the date of service of the Original Complaint in this litigation.

60. Upon information and belief, Defendants own, direct, and/or control the operation of the Accused Instrumentalities and generate substantial financial revenues and benefits therefrom.

61. Upon information and belief, Defendants have directly infringed and continues to directly infringe at least Claims 1-15 of the '918 Patent by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities.  As exemplary, Claim 39 is infringed by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities. Defendants directly make the infringing Accused Instrumentalities at least because it is solely responsible for putting the infringing systems into service by directing or controlling the systems as a whole and by obtaining the benefits therefrom.  More specifically, and on information and belief, with respect to the Accused Instrumentalities, Defendants: (i) developed, own, and maintain hardware and software to allow for the transfer of tickets from a ticket purchaser to second user after the event has started for use by the second user; (ii) provide access to such transfers via their own branded Internet domains and/or software applications using its own name and business trade dress; (iii) exercise authority over the provision of such ticket transfers; (v) openly advertise and promote such ticket transfer

services bearing its name and business trade dress to customers in the United States; (vi) authored or commissioned the preparation of computer code for the transfer of tickets via its Internet domain web pages and/or software applications; (vii) claim ownership and control over such ticket transfers by virtue of its corporate branding and the provision of direct access; and (viii) receive monetary benefits from the provision of such ticket transfer services to customers.

62.     Further on information and belief, Defendants directly use the infringing Accused Instrumentalities at least because they assembled the combined infringing elements and makes them collectively available in the United States, including via their Internet domain web pages and/or software applications, as well as via their internal systems and interfaces. Further, and on information and belief, Defendants have directly infringed by using the infringing Accused Instrumentalities as part of its ongoing and regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires Defendants to make and use the Accused Instrumentalities in an infringing manner.  Still further, Defendants are direct infringers by virtue of their branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Instrumentalities.

63.     As Figures 2-5 show above, Defendants are making, using, and offering for sale a computer-implemented method and apparatus, identified as the Accused Instrumentalities.

64.     On information and belief, the infringement of the Alvao Patents by Defendants is willful by their own citation to the Alvao Patents in patent applications.

65.     In addition or in the alternative, Defendants had knowledge and continue these actions and they indirectly infringe by way of inducing direct infringement by others and/or contributing

to the infringement by others of the '918 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of at least Claims 1-39 of the '918 Patent. This includes without limitation, one or more of the Accused Instrumentalities by making, using, importing offering for sale, and/or selling such services, Defendants injured Alvao and is thus liable to Alvao for infringement of the '918 Patent under 35 U.S.C. § 271.

66.     With the above described knowledge of the Alvao Patents, Defendants induced infringement under Title 35 U.S.C. § 271(b).  Defendants performed actions that induced infringing acts that Defendants knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

67.     Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

68.     Defendants have taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an

infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

69.     The foregoing infringement on the part of Defendants has caused past and ongoing injury to Plaintiff.   The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the Alvao Patents.

70.     Each of Defendants' aforesaid activities have been without authority and/or license from Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Alvao Systems, LLC respectfully requests the Court enter judgment against Defendants as follows:

1.     Declaring that Defendants have infringed each of the Alvao Patents;

2.     Awarding Alvao Systems, LLC its damages suffered because of Defendants' infringement of the Alvao Patents;

3.     Enter a judgment awarding treble damages pursuant to 35 U.S.C. §284 for Defendants' willful infringement of one or more of the Alvao Patents;

4.     Awarding Alvao Systems, LLC its costs, reasonable attorneys' fees, expenses, and interest; and

5.     Granting Alvao Systems, LLC such further relief as the Court finds appropriate.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                               20

## JURY DEMAND

Alvao Systems, LLC demands trial by jury, under Fed. R. Civ. P. 38.

Respectfully Submitted

*/s/ Randall Garteiser*
M. Scott Fuller
   Texas Bar No. 24036607
   sfuller@ghiplaw.com
Randall Garteiser
   Texas Bar No. 24038912
   rgarteiser@ghiplaw.com
René Vazquez
   Virginia Bar No. 41988
   rvazquez@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420

**ATTORNEYS FOR PLAINTIFF**
**ALVAO SYSTEMS, LLC**

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT